# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARLENE SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE OF CALIFORNIA [CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION],<br><br>        Defendant. | Case No. 1:17-cv-01058-LJO-SAB<br><br>AMENDED FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION'S MOTION TO DISMISS<br><br>(ECF No. 7)<br><br>OBJECTIONS DUE WITHIN FOURTEEN DAYS |

On August 8, 2017, Plaintiff Earlene Smith ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 against the California Department of Corrections and Rehabilitation ("CDCR") and numerous unidentified individuals. (ECF No. 1.) Currently before the Court is Defendant CDCR's motion to dismiss, filed September 29, 2017, which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 8.) Plaintiff has not filed an opposition to the motion to dismiss.

A findings and recommendations was filed on October 24, 2017, recommending granting Defendant CDCR's motion to dismiss. (ECF No. 12.) On November 7, 2017, Defendant CDCR filed a request for clarification of the findings and recommendations. Accordingly, the Court issues this amended findings and recommendations.

1

## I.

## COMPLAINT ALLEGATIONS

In mid-June 2016, Plaintiff, who is African-American, was hired as a psychiatric technician at the Central California Women's Facility in Chowchilla.[1] (Compl. ¶¶ 14, 15, ECF No. 1.) On June 30, 2016, Plaintiff misplaced her identification card and searched her person, belongings, and those areas that she had visited to no avail. (Compl. ¶ 16.) Plaintiff reported her identification card as missing. (Compl. ¶ 16.) Plaintiff was told to search again for her identification card and was observed searching by an unidentified individual ("Doe 1") who was supervising the search. (Compl. ¶ 17.)

When Plaintiff was unable to find her identification card, Doe 1 instructed a second unidentified individual ("Doe 2") to take Plaintiff into the bathroom and search Plaintiff's person. (Compl. ¶ 18.) Doe 2 lead Plaintiff into the bathroom and conducted a search which required Plaintiff to display her naked breasts, show her undergarments, and lift her wig. (Compl. ¶ 19.) Plaintiff objected to the invasiveness of the search. (Compl. ¶ 19.) After she left the bathroom, Plaintiff heard Doe 2 say to correctional officers something to the effect of "she showed it all." (Compl. ¶ 20.)

That same day or the following day, Plaintiff, who was distraught and crying, reported the search to a third unidentified individual ("Doe 3"). (Compl. ¶ 21.) Around June 30, 2016, Does 1 and 2 were aware that Plaintiff had reported the search to Doe 3. (Compl. ¶ 21.)

On July 1, 2016, Plaintiff submitted a formal EEO complaint regarding the search. (Compl. ¶ 22.) Does 1, 2, and 3 were aware that Plaintiff submitted the EEO complaint around July 1, 2016. (Compl. ¶ 23.)

On July 7, 2016, Plaintiff was written up for allegedly inadequately responding to an emergency although Plaintiff contends that she conducted herself pursuant to the minimal training that she had been provided. (Compl. ¶ 24.) At least one other psychiatric technician

---

[1] The Court notes that Plaintiff's complaint states that the incidents alleged in the complaint occurred in the City and County of San Francisco (Compl. ¶ 4), which would make venue proper in the Northern District of California. See 28 U.S.C. § 1391(b). However, the Court takes judicial notice that Chowchilla is located in Madera County which is in the Eastern District of California making venue appropriate in this Court.

failed to respond according to protocol but was not written up. (Compl. ¶ 24.)

Prior to July 15, 2016, based upon their investigation, EEO determined that Plaintiff's complaint was supervisory in nature and would not be investigated. (Compl. ¶ 25.) The complaint was forwarded to management for review and appropriate action. (Compl. ¶ 25.) Plaintiff was never informed that any action was taken to address her complaint. (Compl. ¶ 26.)

Other correctional officers told inmates that Plaintiff wore a wig and the manner in which her hair appeared underneath which would only have been known by Doe 2. (Compl. ¶ 27. Plaintiff was taunted by inmates who called her bald headed. (Compl. ¶ 27.) The inmates used this knowledge to taunt, intimidate and harass Plaintiff. (Compl. ¶ 27.)

After Plaintiff complained to her supervisors, Does 1, 2, 3, and other correctional officers and staff refused to give the necessary level of assistance to Plaintiff which caused her job duties to become more difficult and fundamentally altered the conditions of her employment. (Compl. ¶ 28.)

From August 2016 through September 2016, Does 1, 2, 3, and other unidentified individuals retaliated against Plaintiff by filing multiple reports of misconduct against her for trivial matters related to medication management which were either wholly fabricated or were technical violations for which other employees were not written up or reported. (Compl. ¶ 29.)

In September 2016, an unidentified individual ("Doe 8") blamed Plaintiff for some Tylenol 3 tablets that were missing. (Compl. ¶ 30.) Plaintiff denied taking the medication. (Compl. ¶ 30.) Plaintiff alleges that this allegation was made in retaliation for Plaintiff's complaint regarding the unlawful search of her person. (Compl. ¶ 30.)

In September 2016, another unidentified individual ("Doe 9") wrote Plaintiff up for an open food port in retaliation for her report. (Compl. ¶ 31.) Despite widespread practice of managing the food port in the manner that resulted in Plaintiff's write-up, no other employees in Plaintiff's position were written up for the same conduct. (Compl. ¶ 31.)

On September 11, 2016, a sergeant ("Doe 10") yelled at Plaintiff in front of other employees regarding the protocol for a particular inmate's blood sugar management. (Compl. ¶ 32.) No other employees were treated with this level of hostility which changed the conditions

of Plaintiff's working environment. (Compl. ¶ 32.)

On October 30, 2016, Plaintiff was written up by an unidentified individual ("Doe 11"). (Compl. ¶ 33.)

In November 2016, Plaintiff received notice that she would be interviewed regarding the misconduct that she had complained of. (Compl. ¶ 34.)

On December 3, 2016, Plaintiff filed an EEO report regarding the October 30, 3016 write-up. (Compl. ¶ 35.)

Plaintiff brings this action against the CDCR, and unidentified defendants for unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments; and state law claims of race discrimination and retaliation in violation of California Government Code section 12940, assault, battery, negligence, and negligent infliction of emotional distress seeking monetary damages. (Comp. pp. 6-12.)

## II.

## LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations

1 of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Starr, 652 F.3d at 1216.

### B. Motion to Strike

A defendant may move to dismiss various portions of the complaint as redundant, immaterial, or contrary to law pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides that "the court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike pursuant to Rule 12(f) are generally regarded with disfavor and the remedy is to be used only "when necessary to discourage parties from raising allegations completely unrelated to the relevant claims and when the interests of justice so require." Sapiro v. Encompass Ins., 221 F.R.D. 513, 517 (N.D. Cal. 2004).

## III.

## DISCUSSION

Defendant CDCR moves to dismiss the complaint against CDCR on the grounds that CDCR is immune from suit in federal court pursuant to the Eleventh Amendment; the first cause of action fails to state a claim against CDCR; the second cause of action fails to state a prima facie case for race discrimination in violation of the Fair Employment and Housing Act ("FEHA"); Plaintiff has failed to plead a statutory basis for the state claims of assault, battery, negligence, and negligent infliction of emotional distress; CDCR is immune from liability under California Government Code section 815; and Plaintiff's claim for punitive damages is improper as to CDCR and should be stricken.

### A. CDCR is Entitled to Immunity from Suit Under the Eleventh Amendment

Defendant CDCR argues that it has immunity from suit pursuant to the Eleventh Amendment and has not consented to being sued in federal court. Therefore, Defendant CDCR argues that the section 1983 claim and all state law claims in this action should be dismissed against CDCR.

"The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent." Nat. Res. Def. Council v. California Dep't of Transp., 96 F.3d 420, 421 (9th Cir. 1996); see also Sofamor Danek Grp., Inc. v. Brown, 124 F.3d 1179, 1183 (9th Cir. 1997). This immunity under the Eleventh Amendment extends to state agencies and to state officers acting on behalf of the state. Nat. Res. Def. Council, 96 F.3d at 421; Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007); Flint v. Dennison, 488 F.3d 816, 824–25 (9th Cir. 2007). The general rule is that federal court jurisdiction will not be found against a state official when the state is the real party in interest. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984).

The principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Article III of the United States Constitution and a state may not be sued in federal court without its consent. Pennhurst State Sch., 465 U.S. at 98-99. The state's sovereign immunity can be waived, but the Supreme Court has held that the State's consent must be unequivocally expressed. Id. at 99. Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Id. at 100.

1. Section 1983 Claims

Pursuant to the Eleventh Amendment, state agencies and officials are generally immune from liability under 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989) (section 1983 does not permit suits against a state unless the state has waived its immunity); Flint, 488 F.3d at 825 (state officials sued in their official capacities are not "persons" within the meaning of section 1983 and are generally entitled to Eleventh Amendment immunity). The CDCR is a state agency entitled to Eleventh Amendment Immunity. Brown v. California Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Allison v. California Adult Auth., 419 F.2d 822, 822 (9th Cir. 1969). However, the Eleventh Amendment does not bar suit against state officials sued in their individual capacities for acts taken during the course of their official duties. Hafer v. Melo, 502 U.S. 21, 30 (1991); Stilwell v. City of Williams, 831 F.3d 1234, 1245–46 (9th Cir. 2016).

1 | In this instance, Plaintiff is seeking monetary damages alleging violations of the Fourth
2 | and Fourteenth Amendment. The Court finds that Defendant CDCR is entitled to Eleventh
3 | Amendment immunity for the section 1983 claims brought in this action and recommends that
4 | the motion to dismiss be granted as to CDCR for the first cause of action.

2. State Law Claims

Defendant argues that the State has not waived its Eleventh Amendment immunity as to the FEHA claims brought in the complaint. The Ninth Circuit has held that the State of California has not waived sovereign immunity to FEHA actions in federal court. Freeman v. Oakland Unified Sch. Dist., 179 F.3d 846, 847 (9th Cir. 1999); Steshenko v. Gayrard, 44 F.Supp.3d 941, 950 (N.D. Cal. 2014). The FEHA claims must therefore be dismissed as to CDCR.

Defendant also argues that the state law assault, battery, negligence, and negligent infliction of emotional distress claims must be dismissed because such claims must be based on statute and must be plead with particularity. Section 815 of the California Government Code provides that "[e]xcept as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Therefore, "public entity liability is statutory in nature." Peterson v. San Francisco Cmty. Coll. Dist., 36 Cal.3d 799, 809 (1984). In construing section 815, California courts find "that public entities are liable in tort only to the extent declared by statute and that such liability where it exists is subject to certain statutory immunities and defenses." Williams v. State of California, 62 Cal.App.3d 960, 966 (1976); see also Gonzales v. State of California, 29 Cal.App.3d 585, 590 (1972) (the general rule is that "a public entity, which includes the State, is not liable for an injury whether it arises out of an act or omission of the public entity, a public employee or any other person, except as provided by statute"). Plaintiff's complaint is devoid of any allegations that statutory exceptions apply to allow CDCR to be sued in federal court for the state law claims brought in this action.

Accordingly, the Court recommends that Defendant's motion to dismiss the state law claims against CDCR be granted.

**B.      Race Discrimination in Violation of FEHA**

Defendant also argues that Plaintiff's second cause of action for race discrimination in violation of the FEHA must be dismissed because Plaintiff has failed to alleged sufficient facts to state a cause of action.[2]

As relevant here, California law makes it an unlawful employment practice for an employer to "to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment" because of their race. Cal. Gov. Code § 12940(a). To state a claim of race discrimination under the FEHA, a plaintiff must allege that "her employer took one or more adverse employment actions against the plaintiff because of the plaintiff's race." Pinder v. Employment Dev. Dep't, 227 F.Supp.3d 1123, 1136 (E.D. Cal. 2017). A prima facie case of race discrimination requires the plaintiff to show that (1) she was a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstances that suggest a discriminatory motive. Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013); Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011); Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 352 (2000).

Plaintiff alleges that during the term of her employment, she was subjected to discrimination based upon race or ethnicity due "to personnel decision-making based upon race and ethnicity which negatively affected African-American employees, including giving preference in tasks, scheduling and activities, to non-African-American employees." (Compl. ¶ 43.) However, the complaint alleges that Plaintiff was subjected to an illegal search and after reporting the incident she was subjected to harassment by inmates and written up for incidents in retaliation for making the report. There are no factual allegations that Plaintiff was subjected to any personnel decision making based on her race or treated differently than other non-African-

---
[2] As this Court is issuing findings and recommendations which the district judge could decline to adopt the additional arguments in the complaint shall be addressed.

American employees or that any other individual was given "preference in tasks, scheduling and activities."

Further, while Plaintiff alleges that she is African-American, the complaint contains no factual allegations that the incidents alleged in the complaint were because of her race. In the context of a claim alleging violation of the Equal Protection Clause, the Ninth Circuit has stated that the fact that the plaintiff is of a different race than the defendants does not standing alone mean the defendants discriminated on the basis of race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003), overruled on other grounds as recognized by Benson v. City of San Jose, 583 F. App'x 604 (9th Cir. 2014). The Court finds that the complaint is devoid of any factual allegations that would lead to the reasonable inference that adverse action was taken against Plaintiff due to her race. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court recommends that Defendant's motion to dismiss the the second cause of action for race discrimination in violation of California Government Code section 12940 be granted.

**C. Punitive Damages**

Defendant CDCR moves to strike the punitive damage claim against CDCR from the complaint on the ground that punitive damages are not available against public entities under California law.

The purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (citations omitted). Immaterial matter "has no essential or important relationship to the claims for relief or defenses being pleaded"; and "impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).

A claim for damages does not meet the five categories that are covered by Rule 12(f). Whittlestone, Inc., 618 F.3d at 974. Therefore, the Ninth Circuit has held that a motion to strike is the improper method to address Plaintiff's claim for damages. Walker v. McCoud Cmty.

Servs. Dist., No. 2:16-61 WBS CMK, 2016 WL 951635, at *2 (E.D. Cal. Mar. 14, 2016). Here, Defendant is challenging the sufficiency of the pleadings without any argument that the claim is redundant, immaterial, impertinent, or scandalous. A motion addressing damages that are precluded as a matter of law is properly raised as a motion to dismiss or a motion for summary judgment. Whittlestone, Inc., 618 F.3d at 974. "[W]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion." Consumer Sols. REO, LLC v. Hillery, 658 F.Supp.2d 1002, 1021 (N.D. Cal. 2009); Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (citation omitted). Accordingly, the Court shall address Defendant's motion as if it were brought as a motion to dismiss pursuant to Rule 12(b)(6).

Plaintiff seeks damages for her section 1983 cause of action alleging that the defendants acted in reckless and callous disregard for his rights, and the acts were willful, oppressive, fraudulent, and malicious. (Compl. ¶ 41.) As a matter of law, a public entity cannot be sued for punitive damages under section 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Neveu v. City of Fresno, 392 F.Supp.2d 1159, 1183 (E.D. Cal. 2005). Plaintiff cannot seek punitive damages against CDCR for her federal claims proceeding in this action.

Plaintiff also seeks punitive damages for her state law causes of action under California Civil Code section 3294. (Compl. ¶¶ 45, 65.) Pursuant to California Government Code section 818, "a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." As a public entity CDCR cannot be held liable for punitive damages under California law. United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1012 (9th Cir. 2014); State Pers. Bd. v. Fair Employment & Hous. Com., 39 Cal. 3d 422, 434 (1985).

Accordingly, the Court recommends that CDCR's motion to dismiss the punitive damages claims against CDCR be granted.

///

///

1  **D.    Leave to Amend**

Whether a party is given leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995)).

In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004). The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend. Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).

As discussed above, Defendant CDCR is entitled to Eleventh Amendment immunity for the claim brought under section 1983 and the FEHA therefore allowing further amendment of these claims would be futile. Further amendment of Plaintiff's request for punitive damages against the CDCR would be futile as CDCR cannot be held liable for punitive damages under section 1983 or California law. Therefore, the request for punitive damages should be dismissed without leave to amend. However, the Court finds that there are facts that could be alleged to cure the other deficiencies in Plaintiff's pleading. Accordingly, the Court recommends that Plaintiff be granted leave to file an amended complaint.

**IV.**

**CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant CDCR's motion to dismiss, filed September 29, 2017 be GRANTED as follows:

   a. Plaintiff's section 1983 claims, first cause of action, and FEHA claims, second and seventh causes of action, against CDCR be DISMISSED without leave to

|   |    | amend as Defendant CDCR is entitled to Eleventh Amendment immunity; |
|---|----|---|
| 1 |    |  |
| 2 | b. | Plaintiff's second cause of action for racial discrimination in violation of the FEHA be DISMISSED for failure to state a claim; |
| 4 | c. | Plaintiff's state law claims; third, fourth, fifth, and sixth causes of action; against CDCR be DISMISSED with leave to amend; and |
| 6 | d. | Plaintiff's request for punitive damages against CDCR be DISMISSED without leave to amend. |

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 8, 2017**

_____
UNITED STATES MAGISTRATE JUDGE